UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | | |
|---|---|---|---|
| The Estate of Mr. Jerry Lee Littiken, ) | | | |
| By and through Mrs. Linda Littiken, ) | | | |
| Administrator of the Estate of ) | | | |
| Mr. Jerry Lee Littiken ) | | | |
| ) | | | |
| Plaintiff, ) | | | |
| ) | | | |
| v. ) | No. | 2:07-cv-869 | |
| ) | | | |
| Horizon Leasing Company, a Wisconsin ) | | | |
| Corporation; IEA, Inc. a Wisconsin ) | | | |
| Corporation; ) | | | |
| Ms. Susan Inscho Newell, an individual and ) | | | |
| Mr. George O Newell, an individual ) | | | |
| ) | | | |
| Defendants. ) | | | |

### AMENDED SHAREHOLDER'S DERIVATIVE COMPLAINT AND FOR OTHER RELIEF

NOW COMES the Plaintiff The Estate of Mr. Jerry Lee Littiken by and through Mrs. Linda Littiken, Administrator of the Estate of Mr. Jerry Lee Littiken through her attorney Cecala Law Offices, P.C. with her Amended Shareholder's Derivative Complaint and for Other Relief as against Mr. George O. Newell, Ms. Susan Inscho Newell, Horizon Leasing Company, a Wisconsin Corporation, and IEA, Inc. a Wisconsin Corporation and in support of such Complaint state as follows:

### PARTIES

1. That, at all times relevant hereto, Mrs. Linda Littiken ("Administrator") was an individual domiciled in the city of Barnesville, State of Georgia.

2. That, at all times relevant hereto, Mr. Jerry Lee Littiken ("Littiken"), was the husband of the Administrator and was an individual domiciled in the city of Barnesville, State of Georgia.

3. That, at all times relevant hereto, Ms. Susan Inscho Newell ("Inscho") was an individual domiciled in city of Kenosha, State of Wisconsin.

4. That, at all times relevant hereto, Mr. George O. Newell ("Newell") was an individual domiciled in city of Kenosha, State of Wisconsin.

5. That at all times relevant hereto, Horizon Leasing Company. ("HLC") was a registered corporation incorporated in the State of Wisconsin, domiciled in the State of Wisconsin maintaining its principal place of business in the State of Wisconsin...

6. That at all times relevant hereto, IEA, Inc. ("IEA") was a registered corporation incorporated in the State of Wisconsin, domiciled in the State of Wisconsin maintaining its principal place of business in the State of Wisconsin...

7. **JURSIDICTION**

The Court has the power to exercise jurisdiction over this matter pursuant to diversity of citizenship under 28 U.S.C. §1332.

## COUNT I
## COMPLAINT FOR DERIVATIVE RELIEF - IEA

**A. Factual background common to all Counts: Administrator's Standing to bring this action and IEA and HLC ownership, management and control.**

8. That Littiken is a shareholder of IEA and owns an interest equal to fifteen percent (15%) of the common stock of IEA ("Littiken's IEA Shares) and is considered a minority shareholder. **Exhibit A.**

9. That Inscho and Newell own or control all of the shares of common stock of IEA not owned by Littiken and are considered the majority shareholders. **Exhibit A.**

10. That Littiken is a shareholder of HLC and owns an interest equal to fifteen percent (15%) of the common stock of HLC ("Littiken's HLC Shares") and is considered a minority shareholder. **Exhibit A.**

11. That Inscho and Newell own or control all of the shares of common stock of HLC not owned by Littiken and are considered the majority shareholders. **Exhibit A.**

12. That on December 16, 2005, Littiken died intestate. **Exhibit B.**

13. That on April 13, 2006, Mrs. Linda Littiken was named as the Administrator of the Estate of Mr. Jerry Lee Littiken wherein were granted all of the powers contained in the Official Code of Georgia Annotated Section 53-12-232. O.C.G.A. § 53-12-232 (2007).

   Pursuant to her powers, the Administrator is specifically granted the power to:

   "(23) To compromise, adjust, arbitrate, bring or defend actions on, abandon, or otherwise deal with and settle claims in favor of or against the estate or trust as the fiduciary shall deem advisable; * * *."

   O.C.G.A. § 53-12-232 (23) (2007). **Exhibit B.**

14. That the Administrator is the fiduciary for the Estate of Littiken and has both the duty and the authority to deal with Littiken's IEA Shares and Littiken's HLC Shares. *See* O.C.G.A. § 53-12-232 (2007), *et seq.*

15. That the Administrator has standing to bring and action or otherwise act in favor of the Estate of Littiken and, as such, "stands in the shoes" of Littiken for purposes of issues dealing with Littiken's IEA Shares and Littiken's HLC Shares.

16. That on information and belief, Inscho and Newell act as the directors, of the business of IEA and HLC and as such Inscho and Newell, as directors, had and continue to have one or more of the following fiduciary duties to IEA and HLC:

    a. the duty to exercise appropriate attention to the affairs of IEA and HLC;

    b. the duty to act in accordance with the law in all matters concerning the affairs of IEA and HLC;

    c. the duty to act in good faith in all matters concerning the affairs of IEA and HLC;

    d. the duty to exercise due care in all matters concerning the affairs of IEA and HLC; and

    e. the duty of loyalty to IEA, HLC and the shareholders of IEA and HLC concerning the affairs of IEA and HLC.

17. That on information and belief, Inscho and Newell act as the officers, of the business of IEA and HLC and as such Inscho and Newell, as officers, had and continue to have one or more of the following fiduciary duties to IEA and HLC:

> a. the duty to exercise appropriate attention to the affairs of IEA and HLC;
>
> b. the duty to act in accordance with the law in all matters concerning the affairs of IEA and HLC;
>
> c. the duty to act in good faith in all matters concerning the affairs of IEA and HLC;
>
> d. the duty to exercise due care in all matters concerning the affairs of IEA and HLC; and
>
> e. the duty of loyalty to IEA, HLC and the shareholders of IEA and HLC concerning the affairs of IEA and HLC.

**B. Undisputed Facts that the IEA Shareholder Agreement vests shareholder rights and obligations with the Administrator.**

18. That on March 1, 1997, Littiken, Inscho and Newell entered into a certain Shareholder Agreement by and among IEA, Inc., Susan Inscho Newell, George O. Newell and Jerry Littiken ("IEA Agreement"). **Exhibit C.**

19. That the Preamble of the IEA Agreement specifically states the purpose of the IEA Agreement is:

> "* * * that harmony and continuity of management is essential to the Company's success and * * * to make provision for the future disposition of the stock upon the occurrence of specific events; * * *." **Exhibit C.**

20. That pursuant to Article I Section 1.04 of the IEA Agreement, a Shareholder means "any person who shall hereafter acquire any share of Stock." **Exhibit C.**

21. That pursuant to Article I Section 1.05 of the IEA Agreement, a Transfer means:

> "a transfer of title, whether by operation of law or otherwise, and whether or not for value, whereby the ownership or rights in any shares of Stock are * * * alienated to any person * * * or entity * * *. "**Exhibit C.**

22. That the protection of IEA's business by harmony among the shareholders, assurance of IEA's success and the disposition of Stock were specifically contemplated when the parties entered into the IEA Agreement.
23. That the stock of IEA is deemed alienated to the Estate of Littiken by operation of law and that all of the ownership rights attendant with Littiken's IEA Shares belong to the Administrator.
24. That the alienation of Littiken's IEA Shares to the Estate of Mr. Jerry Littiken has, by definition, created the Estate of Mr. Jerry Littiken as a Shareholder under the specific terms of the IEA Agreement, with all of the rights, obligations and privileges of any Shareholder of IEA.
25. That because Littiken's IEA Shares have transferred to the Estate of Littiken the power to exercise such rights and obligations under the IEA Agreement belongs to the Administrator.

**C. Undisputed Facts That a Redemption Event for Littiken's IEA Shares has occurred under the specific terms of the IEA Agreement.**

26. That pursuant to Article III Section 3.01 of the IEA Agreement, a redemption event becomes an obligation of IEA as the IEA Agreement states: "the term Mandatory Redemption Event shall mean * * * the date the Shareholder: * * * (iii) dies." **Exhibit C.**
27. When Littiken died on December 16, 2005, a Mandatory Redemption Event was triggered by the specific terms of the IEA Agreement.
28. That pursuant to Article III Section 3.02 of the IEA Agreement, the surviving shareholders had the right to purchase Littiken's IEA Shares within forty five days (45) of Littiken's death or not later than January 30, 2006. **Exhibit C.**
29. The surviving shareholders did not exercise the option to purchase Littiken's IEA Shares.
30. That pursuant to Article III Section 3.02 of the IEA Agreement, IEA had the obligation to purchase Littiken's IEA Shares not more than one hundred and twenty days (120) from Littiken's death or not later than April 15, 2006. **Exhibit C.**

31. That pursuant to Article IV Section 4.01, the Shareholders had thirty days (30) to reach an agreement on the price to be paid by IEA for Littiken's IEA Shares or not later than January 15, 2006. **Exhibit C.**

32. That the Shareholders did not agree upon a price on or before January 15, 2006.

33. That failure to agree upon the price to be paid for Littiken's IEA Shares triggered the valuation clause of Article IV Section 4.01 which states that the price shall be equal to "the Adjusted Book Value of such Stock being sold as calculated at the end of the month immediately preceding the month in which the purchase occurs." **Exhibit C.**

34. That pursuant to Article I Section 1.01 of the IEA Agreement, the Adjusted Book Value means:

    "the book value of the equipment, plus the current appraised value of any land, plus three times the amount by which the Company's pre-tax earnings exceeds (sic) the book value of all of its assets, all determined in accordance with GAAP consistently applied." **Exhibit C.**

35. That pursuant to Article IV Section 4.02, the payment for the shares was to be made at a "Closing" via a promissory note as attached to the IEA Agreement as Exhibit B and that the value of life insurance proceeds would be applied to the payment for the shares. **Exhibit C.**

36. That pursuant to Article IV Section 4.04 of the IEA Agreement, acknowledges that the parties contemplated that the Administrator shall act on behalf of Littiken for completion of any sale. **Exhibit C.**

**D. Undisputed Facts of Breach of IEA Agreement: IEA has failed to pay the purchase price or even to provide data for the resolution of the purchase of Littiken's IEA Shares.**

37. That IEA, Inscho, Newell and any directors of IEA have failed to pay the purchase price to Littiken or the Administrator for nearly two years since IEA first had the obligation to pay such purchase price.

38. That IEA, Inscho, Newell and any directors of IEA have failed to provide adequate data to the Administrator to resolve the purchase and sale of Littiken's IEA Shares.

39. That the Administrator has called for an accounting and for complete disclosure of any and all information to permit her to deduce the appropriate value for any agreement to sell Littiken's IEA Shares to the Company. **Exhibit D.**

40. That the failure to pay the Administrator the purchase price and to provide data to her for the purpose of concluding the purchase of Littiken's IEA Shares constitutes a breach of the IEA Agreement.

**E. A demand for compliance to Inscho and Newell would be futile as well as any attempt to seek a resolution by the Administrator proceeding with private corporate governance.**

41. That since May 17, 2007, the Administrator has demanded an accounting from IEA to resolve the breach in the IEA Agreement. **Exhibit D.**

42. That IEA, Inscho and Newell have failed to communicate *any* information whatsoever to the Administrator regarding the operation, financial information or meetings of IEA's shareholders, directors or officers.

43. That IEA, Inscho and Newell have withheld all information to the detriment of the Administrator and have done so with the intent to exclude the Administrator from the decisions of IEA.

44. That Inscho expresses her specific intent to exclude the Administrator from any and all IEA matters when she specifically said to the Administrator:

> "as a minority shareholder, you will not have a voice in the management of the company or the determination of any shareholder dividends or other distributions which may or may not be made." **Exhibit A.**

45. That Inscho and Newell have intentionally excluded the Administrator and that Inscho and Newell have acted in bad faith to prevent full and complete disclosure of IEA information to the Administrator in order to prevent the Administrator from obtaining a fair price for Littiken's IEA Shares and to divert the resources of IEA away from the Administrator for Newell's and Inscho's personal gain.

**F. Newell and Inscho have failed to exercise proper business judgment in the operation of IEA.**

46. In addition to the forgoing, Newell and Inscho have caused serious detriment to IEA when they committed or allowed agents of IEA to commit breaches of agreements with Niagara Cooler, Inc. ("Niagara").
47. On information and belief, Newell and Inscho have allowed IEA to suffer losses from litigation with Niagara wherein IEA was found by a jury to have breached agreements, caused damages to Niagara for loss of future profits and intentionally disregard Niagara's rights so as to allow an award of punitive damages against IEA. *See IEA, Inc. et al. v Niagara Cooler, Inc.,* Circuit Court of Kenosha, Wisconsin, Kenosha County, 2006 CV 000580.
48. That the intentional wrongdoing in the line of IEA's business was a serious breach of business judgment by Newell and Inscho.
49. That Newell and Inscho have demonstrated that such judgment is likely to continue by disregarding the Administrator's request for an accounting and by allowing the breaches of the agreements with Niagara.
50. That immediate and irreparable harm shall come to IEA and its ability to fulfill the purposes and responsibilities if Newell and Inscho are allowed to continue to exercise willfully wrong business judgment.
51. That such poor business judgment shall directly affect the ability of IEA to meet its obligations including payment of the purchase price for Littiken's IEA Shares.

WHEREFORE, the Plaintiff, Estate of Jerry Lee Littiken, prays that this Honorable Court enter an order in favor of the Plaintiff and against all Defendants for the following:

a. Immediate establishment of a constructive trust over all matters effecting IEA and appointment of a corporate trustee;
b. Restraining order over any payment or distribution to Newell and Inscho pending the outcome of this matter;
c. Delivery of a full accounting of all financial information and operational data for IEA to the Administrator;
d. Specific performance of the obligations contained in the IEA Agreement; and
e. such other relief as the Court may deem just and equitable.

## COUNT II
## COMPLAINT FOR DERIVATIVE RELIEF - HLC

1. The Plaintiff reallges and reasserts paragraphs 1. though 50. of Count I as and for paragraphs 1. through 50. of Count II as if fully set forth at length herein.

**G. HLC is an affiliate of IEA and shares identical management and ownership.**

52. That Newell and Inscho have conducted the operations of HLC for their personal benefit and without regard for the rights of the Administrator.

53. That although no shareholder's agreement was signed for HLC, Newell and Inscho owe the same duties to the Administrator which they have failed to meet as a corollary to IEA.

54. That the Administrator does not have information as to the operation of and that Newell and Inscho intend to act in exactly the same fashion with the management and decisions of HLC that they have with IEA. *See infra Count I* ¶ 43.

55. That all of the same rights and obligations belong to the Administrator for HLC as IEA.

WHEREFORE, the Plaintiff, Estate of Jerry Lee Littiken, prays that this Honorable Court enter an order in favor of the Plaintiff and against all Defendants for the following:

    a.     Immediate establishment of a constructive trust over all matters effecting HLC and appointment of a corporate trustee;

    b.     Restraining order over any payment or distribution to Newell and Inscho pending the outcome of this matter;

    c.     Delivery of a full accounting of all financial information and operational data for HLC to the Administrator;

    d.     Payment to the Estate of Jerry Lee Littiken for his interest in HLC; and

    d.     such other relief as the Court may deem just and equitable.

# COUNT III
# BREACH OF FIDUCIARY DUTIES – IEA & HLC

1. The Plaintiff reallges and reasserts paragraphs 1. though 54. of Count II as and for paragraphs 1. through 54. of Count III as if fully set forth at length herein.

**H. Inscho and Newell have specific fiduciary duties to the Administrator and to IEA and HLC which they have flagrantly failed to honor.**

56. That Newell and Inscho have conducted the operations of HLC for their personal gain, without regard for the rights of the Administrator and without loyalty to IEA, HLC or the Administrator.

57. That for nearly two years, the Administrator has not received funds from IEA or HLC which has damaged the Estate of Jerry Lee Littiken .

58. That the actions of Inscho and Newell were intentional and were calculated to deprive the estate of their late partner of his fair and just reward for his life's labors.

59. That the breaches of responsibility to the Estate of Jerry Lee Littiken are unconscionable and should shock the conscience of the Court in that the actions were calculated to cause distress to the Administrator at a time of death and to use the absence of Littiken as a negotiation tool to prevent fair dealing to the Administrator and that they constitute a breach of one or more of the following:

   a. the duty to exercise appropriate attention to the affairs of IEA and HLC;

   b. the duty to act in accordance with the law in all matters concerning the affairs of IEA and HLC;

   c. the duty to act in good faith in all matters concerning the affairs of IEA and HLC;

   d. the duty to exercise due care in all matters concerning the affairs of IEA and HLC; and

   e. the duty of loyalty to IEA, HLC and the shareholders of IEA and HLC concerning the affairs of IEA and HLC.

WHEREFORE, the Plaintiff, Estate of Jerry Lee Littiken, prays that this Honorable Court enter an order in favor of the Plaintiff and against Defendants Susan Inscho Newell and George Newell for the following:

  a. Actual Damages in the amount due to the Estate of Jerry Littiken for his interest in IEA plus interest at the statutory rate of interest then in effect in the State of Wisconsin from the date such payment was due to the present; and

  b. Actual Damages in the amount due to the Estate of Jerry Littiken for his interest in HLC plus interest at the statutory rate of interest then in effect in the State of Wisconsin from the date such payment was due to the present; and

  c. Punitive damages in the amount of the Five Million Dollars ($5,000,000.00); and

  c. such other amounts as the Court deems just and equitable.

            Respectfully submitted,

          _____/s/_____
            One of Plaintiffs Attorneys

Cecala Law Offices, P.C.
7645 North Nora
Niles, Illinois 60714
Phone 312-235-6752
Facsimile 773-304-2538